Shawn PRATT, Petitioner–Appellant,

v.

Charles GREINER, Respondent–Appellee.

No. 01–2460.

United States Court of Appeals, Second Circuit.

Argued: April 12, 2002.

Decided: Oct. 4, 2002.

Fern H. Schwaber, Schwaber & Kafer, New York, NY, for Petitioner–Appellant Shawn Pratt.

Tziyonah M. Langsam, Assistant District Attorney, Kings County, N.Y. (Diane R. Eisner, Leonard Joblove, Assistant District Attorneys, of counsel; Charles J. Hynes, District Attorney, on the brief), for Respondent–Appellee Charles Greiner.

Before: McLAUGHLIN, POOLER, and B.D. PARKER, Jr., Circuit Judges.

B.D. PARKER, Jr., Circuit Judge.

Petitioner-appellant Shawn Pratt ("Pratt") appeals from a judgment of the United States District Court for the Eastern District of New York (Jack B. Weinstein, *Judge*), denying his petition for a writ of habeas corpus which principally alleged the ineffective assistance of trial counsel. He was incarcerated following his 1994 conviction for murder in the second degree and criminal possession of a weapon in the second degree. Prior to filing his federal habeas petition, Pratt moved in state court pursuant to New York Criminal Procedure Law ("CPL") § 440.10 to vacate his conviction on the ground that the prosecution improperly withheld an investigative report constituting *Rosario* material but withdrew the motion shortly before the state court issued a decision. *See People v. Rosario*, 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961) (holding that trial court erred by failing to compel prosecution to turn over witnesses' prior statements relating to their trial testimony). If "properly filed" under 28 U.S.C. § 2244(d)(2), this motion would toll the one-year statute of limitations under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). If not "properly filed," Pratt's petition would be untimely and federal habeas review would be precluded. Whether Pratt's motion was "properly filed" depends on the extent to which a federal habeas court can assess the legitimacy of the state court filing.

To prove that the prosecution improperly withheld evidence, Pratt annexed to his motion a police report of highly dubious authenticity. However, because Pratt withdrew the motion, the state court never made *any* findings as to its authenticity. After conducting a hearing, the District Court concluded that the report was a forgery, that Pratt knew it to be such, and that Pratt deliberately sought to mislead the courts by attaching it to his motion. Notwithstanding these factual findings, the District Court concluded that the motion tolled AEDPA's statute of limitations. On the merits of Pratt's habeas petition, the District Court concluded that Pratt was not denied effective assistance of counsel, but nonetheless granted a Certificate of Appealability on this issue.

The respondent urges us not to consider the merits of Pratt's habeas petition because Pratt's fraudulent motion to vacate his conviction was not "properly

filed" under 28 U.S.C. § 2244(d)(2). We disagree. Guided by *Bennett v. Artuz*, 199 F.3d 116, 122 (2d Cir.1999), *aff'd*, 531 U.S. 4, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000), we hold that our inquiry into whether a state court motion was "properly filed" is limited to ensuring adherence to state court filing procedures and does not extend to scrutinizing the merits of the motion. Thus, even if Pratt's state court motion relied on a forged document, it still was "properly filed" under AEDPA.

Alternatively, the respondent urges our affirmance of the District Court's denial of Pratt's ineffective assistance petition on the merits. We are unable to review this denial. At the time of its ruling, the District Court did not have the benefit of our decision in *Rudenko v. Costello*, 286 F.3d 51 (2d Cir.2002), emphasizing the importance of decisions "sufficiently informative to permit meaningful appellate review . . . ." *Id.* at 64. Consequently, we remand to afford the District Court the opportunity to make such findings.

## BACKGROUND

This case arises from a brutal killing that occurred during the early morning hours of May 31, 1993, in Brooklyn, New York. The prosecution's proof at trial was that, at approximately 3:00 a.m. on May 31, Pratt drove a green Cutlass past 360 Stockton Street in Brooklyn. Sitting on a stoop at 360 Stockton Street were William Lebron, Lebron's cousin Julio Aponte, Lisa Lugo, and two other men. While slowly driving past these individuals, Pratt stared at Aponte, and Aponte stared back at Pratt for approximately five seconds. Soon thereafter, a second car slowly passed the stoop. At approximately 4:00 a.m., Aponte and Lugo left 360 Stockton Street, while Lebron and the other two men remained. As Aponte and Lugo were walking away, Pratt and another individual, both armed with guns, returned, grabbed Lebron, and forcefully pulled him

off the stoop. Pratt and his accomplice instructed Lebron to put his hands in the air and Pratt demanded, "Where is it at?" Lebron pointed and responded, "right there, right there." After Pratt held a gun to Lebron in front of 360 Stockton Street, Lebron ran away from Pratt. Pratt then shot Lebron in the back, causing his death, and fled in the opposite direction. Aponte and Lugo witnessed these events from approximately fifty feet away.

The prosecution's case relied heavily on eyewitness testimony from Aponte and, to a lesser extent, Lugo. Aponte recognized the shooter as the driver of the green Cutlass that had passed by at approximately 3:00 a.m. and recalled the shooter to be tall and chubby with dark skin and a mustache. Lugo agreed that the man who pointed a gun at Lebron was chubby and "kind of big." She also testified that the shooter's hair was styled into short braids. Aponte also could tell that the shooter sported a "flattop" hairstyle and remembered seeing him previously in the neighborhood. Several months later, Aponte saw an individual he recognized as the shooter exit a Cutlass, recorded the car's license plate number, and contacted the police. Investigators soon learned that this car was registered to Pratt and that an individual who went by the street name "Bear" sometimes frequented the neighborhood. One of the state's investigators eventually learned that Pratt's street name was "Bear." On August 28, 1993, the investigator showed Aponte a photograph array that included a photograph of Pratt taken in 1990 and photographs of five other individuals. Aponte positively identified Pratt from this array. Lugo also viewed this array but was unable to identify the assailant because, at the time of the incident, she could not view his face. At some point, Aponte also viewed a photograph of "Bear" from a friend and recognized him as the person who killed Lebron. Aponte

testified inconsistently as to when he viewed this individual photograph. Pratt was arrested on September 16, 1993. Aponte and Lugo were brought to the police station to view a lineup of Pratt and five other individuals. Aponte identified Pratt as the killer, but Lugo remained unable to make an identification.

On October 18, 1994, essentially on the testimony of a single eyewitness, Pratt was convicted in New York State Supreme Court, Kings County, of murder in the second degree, N.Y. Penal Law § 125.25(1), and criminal possession of a weapon in the second degree, *id.* § 265.03. Pratt was sentenced to concurrent terms of twenty-one years to life for murder and seven and one-half to fifteen years for criminal possession of a weapon. On direct appeal, Pratt raised a number of claims including the ineffective assistance of trial counsel as follows:

> Whether defense counsel's conduct at trial, which included repeatedly eliciting damaging evidence on cross examination, opening the door to unduly prejudicial testimony which would otherwise have been inadmissible, failing to object to the introduction to [sic] inadmissible bolstering and other hearsay evidence, refusing the court's offer to charge acting in concert and manslaughter, and delivering an ineffective summation deprived appellant of the effective assistance of counsel.

(App. Div. Br. at 2 (citing U.S. Const. amends. VI, XIV; N.Y. Const. art. I, § 6).) The Appellate Division rejected Pratt's claim of ineffective assistance of counsel after examining "the evidence, the law, and the circumstances of [this] particular case." *People v. Pratt,* 237 A.D.2d 467, 655 N.Y.S.2d 968 (N.Y.App.Div.1997) (alteration in original) (citations and quotations omitted). On July 16, 1997, the New York Court of Appeals denied Pratt's application for leave to appeal. *People v.*

*Pratt,* 90 N.Y.2d 896, 662 N.Y.S.2d 439, 685 N.E.2d 220 (1997). On March 19, 1998, Pratt applied to the Appellate Division for a writ of error *coram nobis* alleging ineffective assistance, and, on June 22, 1998, this application was denied. *People v. Pratt,* 251 A.D.2d 602, 673 N.Y.S.2d 944 (N.Y.App.Div.1998). On none of these occasions did Pratt allege as a ground for ineffectiveness his trial counsel's failure to pursue an alibi defense. The alibi defense allegation surfaced for the first time in a reply memorandum submitted during federal habeas proceedings.

On August 27, 1998, Pratt moved pursuant to CPL § 440.10 to vacate his conviction alleging that the State improperly withheld *Rosario* material at his trial. Pratt's motion annexed a DD-5 police report, allegedly prepared by one of the investigating officers, that memorialized taking Aponte on a neighborhood canvass on June 17, 1993 in hopes of locating Pratt. The report indicated that before Aponte viewed the photograph array and the lineup, the detective took Aponte on a neighborhood canvass and displayed a photograph of Pratt to a person identified as Juan Rodriguez. Pratt argued that by deliberately withholding this form, which suggested that *Aponte* had access to a photograph of Pratt before the lineup, the prosecution engaged in misconduct by attempting to mislead the court at the *Wade* hearing. *See United States v. Wade,* 388 U.S. 218, 235–38, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (holding post-indictment lineup is critical stage of trial at which defendant is entitled to presence of counsel).

After initially arguing that the DD-5 report did not prejudice Pratt, the State became suspicious of the report's legitimacy and moved for reargument. The State then explained that it never turned over the report because "th[e] DD-5 is a forgery created by the defendant in an effort

to avoid his responsibility for the murder of William Lebron." The State also offered two DD–5s from the District Attorney's file, which used fonts different from the one submitted by Pratt, and pointed out that the subsequent chain of events was inconsistent with the police's possession of a photograph of Pratt on the date the report indicated. On February 17, 1999, the state court ordered a hearing to determine whether the report submitted by Pratt was a forgery and instructed Pratt to establish how he obtained the report and to demonstrate its authenticity. On March 3, 1999, the day the hearing was scheduled to begin, Pratt withdrew the motion to vacate his conviction.

On March 19, 1999, Pratt filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition raised two claims, ineffective assistance of counsel and the improper bolstering by the trial judge of the testimony of a prosecution witness. In his Supplemental Memorandum before the District Court, Pratt raised for the first time an allegation that his trial counsel failed to pursue an alibi defense.

The State argued that Pratt's federal habeas petition was time-barred under 28 U.S.C. § 2244(d) because it was filed more than one year after Pratt's conviction became final. While the State acknowledged that Pratt's petition would be timely if the pendency of his motion to vacate tolled AEDPA's statute of limitations, the State argued that Pratt should not benefit from AEDPA's tolling provision because he withdrew the motion to vacate as the state court was about to conduct a hearing to determine if Pratt had forged the document on which his motion was based.

The District Court conducted a hearing on the statute of limitations issue and the ineffective assistance claim. It determined that "the DD–5 that the defendant relied upon was forged, and that the defendant was aware that it was forged and deliberately sought to mislead the state courts and the federal court in the habeas proceedings by its use." (Hearing Transcript, June 29, 2001 ("Tr.") at 8.) Nonetheless, the District Court concluded that the motion tolled AEDPA's statute of limitations, reasoning that "[a]lthough ... I'm dubious about whether that should be the ruling in a case as flagrant as this one, the rule is, however, that ... it would unduly complicate habeas proceedings in the federal court if we had to look into the bona fides of the state proceeding." (*Id.* at 9.) The District Court then denied Pratt's habeas petition upon concluding that defense "counsel was capable, and that the defense was conducted in an appropriate way." (*Id.*) The District Court granted a Certificate of Appealability on the ineffective assistance claim.

## DISCUSSION

Two distinct issues are before us. First, the respondent argues that Pratt's petition is time-barred because his underlying state court motion relied on a fraudulent police report and consequently was not "properly filed" under 28 U.S.C. § 2244(d)(2). The second issue is, if the petition is timely, whether Pratt is entitled to habeas relief because of the ineffective assistance of counsel.

### I. Timeliness

AEDPA's relevant statute of limitations and tolling provisions are as follows:

(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

. . .

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). Because the New York Court of Appeals denied Pratt's application for leave to appeal his conviction on July 16, 1997, *Pratt*, 90 N.Y.2d 896, 662 N.Y.S.2d 439, 685 N.E.2d 220, his state court judgment became final, for purposes of § 2244(d)(1), ninety days later on October 14, 1997.[1] Consequently, to be timely, his federal habeas petition was required to be filed one year later—October 14, 1998—unless the period was tolled.

That period was tolled for ninety-five days (March 19, 1998 to June 22, 1998) while Pratt's *coram nobis* petition was pending. His motion under CPL § 440.10, which was based on the police report of questionable authenticity, was pending for one hundred eighty-eight days (August 27, 1998 to March 3, 1999). Accordingly, Pratt's federal habeas petition, which was filed on March 19, 1999, was timely if the CPL § 440.10 motion tolled the statute but untimely if it did not.

The District Court found that the document was forged and that the defendant had deliberately sought to mislead the state and federal courts. (Tr. at 8.) Pratt never explained where or how he obtained the police report. The State noticed that the report contained a different font from the one normally used in this sort of report, and, after closer analysis, detected unresolvable inconsistencies between the

date of the neighborhood canvass supposedly memorialized in the report and other phases of the investigation. When the state court ordered a hearing to determine the report's authenticity, Pratt promptly withdrew his motion to vacate. Although not pertinent to our ultimate conclusion, we accept the District Court's factual finding that the police report was forged, that Pratt knew it to be forged, and that Pratt endeavored to mislead the courts.

█ The District Court concluded that, despite the fraudulent nature of Pratt's state court motion, it still tolled AEDPA's statute of limitations. (Tr. at 9.) Whether a state court motion based on a fraudulent document is "properly filed" within the meaning of § 2244(d)(2) is a question of law that we review *de novo*. *See Smaldone v. Senkowski*, 273 F.3d 133, 136 (2d Cir.2001) (holding that whether the period during which a petitioner may pursue *certiorari* on state collateral motions tolls AEDPA's statute of limitations is a question of law to be reviewed *de novo* ), *cert. denied*, —— U.S. ——, 122 S.Ct. 1606, 152 L.Ed.2d 621 (2002). We affirm the District Court's conclusion that the motion was "properly filed." The law in our Circuit is well-settled that courts, on habeas review, should not scrutinize the legitimacy of state court filings to determine whether they were "properly filed" within the meaning of § 2244(d)(2). *See Bennett v. Artuz*, 199 F.3d at 121–23.

█ *Bennett* addressed this very question. There, the petitioner sought post-conviction relief in state court. When he later petitioned for federal habeas relief, the respondent contended that the state court motion had not been "properly filed" under § 2244(d)(2) because the petitioner

---

1. A conviction becomes final for purposes of 28 U.S.C. § 2244(d) upon expiration of the ninety-day period to petition for a writ of *certiorari* to the United States Supreme Court. Sup.Ct. R. 13(1); *Valverde v. Stinson,* 224

F.3d 129, 132 (2d Cir.2000); *see also Hizbullahankhamon v. Walker,* 255 F.3d 65, 68 (2d Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 2593, 153 L.Ed.2d 782 (2002).

did not bring the claim in a court authorized to grant the relief sought. *Id.* at 121. We rejected this invitation to examine the merits of filings under substantive state law, and we refused "'to engraft a merit requirement into § 2244(d)(2) without some indication of congressional intent to do so.'" *Id.* at 122 (quoting *Villegas v. Johnson,* 184 F.3d 467, 470 (5th Cir.1999)); *accord Lovasz v. Vaughn,* 134 F.3d 146, 148–49 (3rd Cir.1998). We held in *Bennett* that our inquiry into whether a state court motion has been "properly filed" is limited to whether the motion was filed in accordance with "the state's procedural requirements, such as the rules governing notice and the time and place of filing." *Bennett,* 199 F.3d at 121 (quoting *Villegas,* 184 F.3d at 469 (internal quotations omitted)). Our reasoning for adopting this narrow definition of "properly filed" echoed the notions of federalism and comity that pervade our federal habeas jurisprudence. *See, e.g., Coleman v. Thompson,* 501 U.S. 722, 732, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (independent and adequate state grounds doctrine); *Reed v. Ross,* 468 U.S. 1, 10–11, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984) (procedural default doctrine); *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) (exhaustion requirement). We explained in *Bennett,*

> Determining whether a pending-state-court motion is procedurally barred under a state law such as CPL §§ [sic] 440.10(2) is beyond the appropriate role of a federal court in addressing whether a state post-conviction application was "properly filed." *It would involve federal courts in making determinations as to the proper outcome of pending state proceedings based on state law when a*

*state court is positioned to make the very same decision.*

199 F.3d at 122 (emphasis added).

Because the respondent does not contend that Pratt's filings offended any state procedural requirement, *Bennett* controls and Pratt's motion to vacate was a "properly filed" application under § 2244(d)(2).

## II. Ineffective Assistance of Counsel

■ Having concluded that Pratt's petition was timely, we now turn to his claim of ineffective assistance of counsel. We review *de novo* the District Court's denial of Pratt's petition for a writ of habeas corpus. *See Pavel v. Hollins,* 261 F.3d 210, 215 (2d Cir.2001).

To prevail on a claim of ineffective assistance, a habeas petitioner must establish that counsel's performance "fell below an objective standard of reasonableness" and that there is a "reasonable probability" that the outcome would havè been different if not for the deficient representation. *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Our review of counsel's performance is, of course, "highly deferential." *Id.* at 689, 104 S.Ct. 2052. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.*

■ Before we address the District Court's denial of Pratt's ineffective assistance claim, we first note that, as the respondent concedes, Pratt's allegation pertaining to the alibi defense is unexhausted and apparently has not been procedurally defaulted in state courts.[2] His petition is, therefore, a mixed petition. A

---

**2.** Under CPL § 440.10, a state court would have discretion, but would not be required, to deny Pratt's allegation that counsel's failure to pursue an alibi defense constituted ineffective assistance, as the trial record failed to provide an adequate basis for review on direct appeal. CPL § 440.10(2) mandates denial if "sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion ...." CPL

district court confronted with a mixed petition "can offer the petitioner 'the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims.'" *McKethan v. Mantello*, 292 F.3d 119, 122 (2d Cir.2002) (quoting *Rose v. Lundy*, 455 U.S. 509, 510, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982)); *see Zarvela v. Artuz*, 254 F.3d 374, 380–81 (2d Cir.), *cert. denied*, —— U.S. ——, 122 S.Ct. 506, 151 L.Ed.2d 415 (2001). A district court also may, as the court below apparently did, deny a petition on the merits even if it contains an unexhausted claim. AEDPA provides, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

■■ We are unable to determine on the present record whether Pratt's petition was properly denied on the merits since the District Court made no findings as to whether trial counsel's failure to pursue an alibi defense amounted to ineffectiveness. After finding the petition timely under AEDPA, the district court concluded:

> I find no basis, however, to grant [the petition]. The main predicate for the petition is the failure of defense counsel to act with minimum capacity and standards.
>
> A reading of the record suggests that the counsel was capable, and that the defense was conducted in an appropriate way.
>
> I cannot find any basis for granting the writ on the merits.

§ 440.10(2)(c); *see People v. Delarosa*, 287 A.D.2d 735, 736, 732 N.Y.S.2d 108, 110 (N.Y.App.Div.2001) (holding that question of whether trial counsel failed to serve a timely alibi notice is a "matter[ ] dehors the record which could not be reviewed on direct appeal" and, therefore, should not result in a mandatory denial under CPL § 440.10[2][b] ).

(Tr. at 9.) These statements constituted the entirety of the District Court's discussion of the merits of Pratt's petition. Under our subsequent decision in *Rudenko v. Costello*, 286 F.3d 51 (2d Cir.2002), this disposition was insufficient because "district courts are required to render decisions that are at least sufficiently informative to permit meaningful appellate review . . . ." *Id.* at 64. While the District Court may have had satisfactory reasons for dismissing the petition, we cannot presume "the correctness of an unexplained decision rendered on a record that is inadequate to reveal the decision's rationale." *Id.* at 67–68.

## CONCLUSION

For the foregoing reasons, we vacate the judgment of the District Court and remand for further proceedings.

Rather, Pratt's alibi allegation falls under CPL § 440.10(3)'s discretionary denials. *See Caballero v. Keane*, 42 F.3d 738, 740–41 (2d Cir.1994) (holding ineffective assistance claim involving matters "clearly outside of the trial record" to be unexhausted because New York procedures remained available pursuant to CPL § 440.10).