People v Pratt (2004 NY Slip Op 50566(U))

[*1]

People v Pratt

2004 NY Slip Op 50566(U)

Decided on March 31, 2004

Supreme Court, Kings County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 31, 2004

Supreme Court, Kings County
The People of the State of New York
against
Shawn Pratt
10997/93

Joel M. Goldberg, J.
The defendant under Kings County Indictment Number 10997/93 was convicted after a jury trial before me of Murder in the Second Degree (PL 125.25 [1]) and Criminal Possession of a Weapon in the Second Degree (PL 265.03 [2]) on November 21, 1994 and was respectively sentenced to concurrent terms of twenty-one years to life and seven and a half to fifteen years.
The defendant's conviction was affirmed on March 17, 1997. People v. Pratt, 237 AD2d 467 (2d Dept. 1997). The defendant's application for leave to appeal to the Court of Appeals was denied. People v. Pratt, 90 NY2d 896 (1997).
INTRODUCTION AND BACKGROUND
The defendant's first motion to vacate this judgment pursuant to CPL 440.10, dated August 27, 1998, was withdrawn on March 3, 1999 after the People contended it was based on a forged police report "cut and pasted" from different police reports and the Court ordered a hearing.
The defendant brought a second motion to vacate judgment, dated November 27, 2002. In the second motion the defendant contended his trial counsel was ineffective for failing to call an alibi witness at the defendant's trial by the name of "Richard Pipchinski." This Court issued a Decision and Order, dated February 14, 2003, reserving decision on this motion and requesting additional papers from both sides. The February 14, 2003 Decision and Order also set forth the lengthy post-conviction procedural history of this case, including at page 5, a reference to a finding by the Honorable Jack B. Weinstein of the United States District Court for the Eastern District of New York on the defendant's petition for a writ of habeas corpus, filed after the defendant withdrew his first CPL 440.10 motion, that the police report submitted by the defendant on that motion was, in fact, a forgery and the defendant knew it was forged.
In a Decision and Order, dated June 19, 2003, this Court denied the defendant's November 27, 2002 motion to vacate judgment without a hearing. In that decision, it is noteworthy that this Court found that the defendant, as in his first CPL 440.10 motion, may also have submitted forged documents as exhibits, including a purported letter from his trial attorney which, by affirmation, his trial attorney denied writing and a purported letter from the newly claimed alibi witness, Richard [*2]Pipchinksi.
THE CURRENT APPLICATION
By papers, dated August 26, 2003, the defendant claims to seek "reconsideration" of this Court's June 19, 2003 Decision and Order denying his November 27, 2003 CPL 440.10 motion. Although nominally a request for "reconsideration," in actuality, the defendant raises entirely new claims. The defendant totally abandons his arguments concerning ineffective counsel and the "Pipchinski alibi," and now claims the judgment should be vacated, because the People failed to disclose prior to trial Rosario material, to wit: a document from the District Attorney's Office purportedly revealing that the sole eyewitness who identified the defendant at trial had made a previously undisclosed photographic identification of the defendant.
The People contend that this document, like others previously submitted by the defendant, is also a forgery.
CONTENTIONS BY THE PARTIESDefendant's Motion (August 26, 2003)
The defendant's August 26, 2003 motion asserts a newly raised Rosario claim regarding the People's alleged failure to produce a homicide bureau investigative report ("report") prior to trial. The report, appended to the defendant's motion, includes a homicide notification purportedly drafted by Assistant District Attorney Kin Ng on June 3, 1993. This report, dated prior to the defendant's September 16, 1993 arrest, names the defendant as the shooter which would support the defendant's claim of an undisclosed photographic identification by the witness. The relevant portion of the report reads as follows:
NOTIFICATION BY ADA NG ON 6/3/93 - VICTIM SHOT MULTIPLE TIMES
FACT SYNOPSIS:
Deceased William Lebron was sitting in front of 360 Stockton with cousin Julio Aponte, his cousin's girlfriend Lisa Lugo, and two unidentified males. Witness [sic] Aponte and Lugo walk off approximately ½ block to one block away. Two dark skinned males approach, both displayed a gun. The suspects smack one of the unidentified males and pulled deceased Lebron off the stairs. Defendant Pratt [emphasis supplied] then talks with deceased Lebron and deceased Lebron points to a garbage can. The deceased Lebron is then shot two time [sic] from the back as he tried to run, by defendant [emphasis supplied]. Lebron is pronounced dead at scene on 5/31/93, at approximately 4:08 a.m.
The defendant's motion asserts he received this report from the Kings County District Attorney's Office in the mail pursuant to a Freedom of Information Law ("FOIL") request (see Defendant's motion, dated August 26, 2003, p. 2), and, he accuses the People of withholding the report from his attorney at trial.
Because the defendant was not arrested until September 16, 1993, and the police, based on trial testimony from Detective Adams, claimed to be unaware of the defendant's identity as the [*3]shooter until August 1993, two months after Ng's report, it is the defendant's contention that this report serves to prove that Aponte's undisclosed identification provided the basis for Ng naming the defendant in the report.
Defendant's "Supplemental Affirmation of Law"
("October 2003" - Notarized October 14, 2003)
The defendant's "supplemental affirmation of law" essentially reiterates the arguments raised in his preceding papers and adds the argument that the report should have been considered at the Wade hearing based on the defendant's allegation that a single, suggestive photograph was shown to Aponte prior to the noticed identification procedures.
People's Affirmation in Opposition (October 22, 2003)
The People contended in their opposition to the defendant's motion that the Ng report appended to the defendant's papers is a forgery. As stated in their papers, the actual report by ADA Ng, dated June 3, 1993, reflects a narrative of the facts of the homicide but no suspects are named. Another report, dated September 16, 1993, the date of the defendant's arrest, identifies the defendant by name. The People allege that the defendant lifted the text from the follow-up report prepared on September 16, 1993 by two different Assistant District Attorneys (ADAs Corrigan and Diaz), which identifies the defendant by name, and then, "cut and pasted" that text in Ng's report to make it appear as though it was prepared by ADA Ng and that Pratt's identity was known when ADA Ng prepared his earlier report.
To support their argument that the report submitted by the defendant is a forgery, the People attached to their papers a copy of Ng's original report from their files. (Apparently, the People are unable to locate the original Ng report and are able to submit only a copy which they assert is the accurate version.) 
Defendant's Reply Affirmation (October 30, 2003)
In reply to the People's response, the defendant makes the following allegations: (1) "the People are deceiving this Court with false allegations that the defendant relied on a forged report" as a basis for his current motion; (2) that an investigator from the Kings County District Attorney's Office met with the defendant in prison as part of an investigation of Assistant District Attorneys for corruption, tampering with files and withholding reports; (3) that the report provided by the defendant is genuine and was typed by ADA Ng because, at the bottom of ADA Ng's portion of the report, it bears the initials "SFC," which the defendant claims stand for "Senior Officer in Charge" who would be ADA Ng; and (4) that the follow-up report by ADAs Corrigan and Diaz submitted with the People's answer also was never provided to the defendant prior to trial.
People's Supplemental Affirmation (Sur-Response)
(January 30, 2004)
[*4]In these papers, the People contended that in furtherance of a scheme to have the forged copy of the Ng report placed in the District Attorney's files, someone forged a letter purported to be from ADA Ng, enclosed a copy of the forged Ng report, and caused it to be mailed, with a Brooklyn, New York postmark to the District Attorney's office addressed to Jonathan Rubin, the paralegal who handles FOIL requests. The purportedly forged letter, sent in a large envelope using a photocopied District Attorney's office mailing label (as determined by examination of the label by the Court) and postmarked August 25, 2003, was purportedly written by ADA Ng and stated that "Homicide Investigative Reports" in People v. Pratt were being returned for placement in the case file and that "I [ADA Ng] was the original A.D.A. prosecuting this case Ten years ago." That letter was dated August 18, 2003 and closed, "Yours truly, A.D.A. Ng" but bore no signature. 
The People's response also asserted that in August 2003, ADA Ng had an office on the fifteenth floor of the District Attorney's Office, while the FOIL Officer to whom the letter and envelope were addressed had an office on the twentieth floor.
 In an affirmation attached to the People's response papers as Exhibit 2, ADA Ng asserted: (1) that he did not author or mail the purported letter, dated August 18, 2003; (2) that he did not draft or mail a copy of the June 3, 1993 report in which the defendant is named as a suspect; (3) that at the time he prepared the actual report in this case, the suspects in this case were unnamed; (4) that he was not the "original assistant who prosecuted this case" and was merely an investigative assistant who "took a notification that a homicide had occurred"; (5) that he never sent any report to Rubin the FOIL Officer in this case or any other case; (6) that in August of 2003 his office was on the fifteenth floor of 350 Jay Street and if he had something to provide to the FOIL Officer, he would have delivered it by hand or via interoffice mail; and (7) that if he had written to Rubin, he would have put Rubin's full address at the top of the letter rather than "Notification to Jonathan E. Rubin Records Access Officer," closed the letter with his full title, "Assistant District Attorney," not "A.D.A.," used his first name as well as his last name, and signed it.
Based on these arguments, the People contended the defendant had forged the purported August 18, 2003 letter from ADA Ng as well as the June 3, 1993 report.
The People's answer also stated that on October 16, 2003, a Detective Investigator from their office interviewed the defendant for the purpose of investigating what was believed to be a forged June 3, 1993 report using a ruse that he was investigating improprieties by Assistant District Attorneys. The People's answer did not discuss any statements made at that time by the defendant.
In further support the People's claim that the June 3, 1993 version of the report supplied by the defendant was a forgery, the People appended a copy of the handwritten follow-up report by ADA's Corrigan and Diaz.
The People again contended, as they did in their October 22, 2003 papers, that a comparison of the typed September 16, 1993 follow-up report and the June 3, 1993 report submitted by the defendant would show that the defendant "cut and pasted" the typed opening paragraph naming the defendant in the September 16, 1993 follow-up report onto ADA Ng's June 3, 1993 report. To substantiate this claim, the People noted that the handwritten version of the September 16, 1993 follow-up report began by using a photocopy of ADA Ng's typed June 3, 1993 report to give a narrative of the facts of the shooting and contained as notes of changes to be made by the typist, a handwritten substitution on the photocopy of the words "defendant Pratt" over Ng's words "the suspect with the gun" and an addition of the phrase, "as he tried to run, by defendant Pratt" to note [*5]when Lebron was shot. The handwritten follow-up report then continued with several paragraphs of additional handwritten information below Ng's original "Fact Synopsis" and continued for five additional handwritten pages.
The People asserted that based upon the history of this case, including past instances where the defendant presented forged documents in support of previous post-conviction motions, the defendant's allegations against the People cannot be credited, are unsupported, contradicted by official documents, have no reasonable possibility of being true, and therefore, his motion to vacate the judgment should be summarily denied pursuant to CPL 440.30 (4) (d).
Further, the People claim that the record reflects that authentic copies of both the June 3, 1993 and September 16, 1993 reports were provided to the defendant prior to trial and, in any event, the September 16, 1993 report did not constitute Rosario material because ADA Corrigan was called as a defense witness.
Defendant's Sur-Reply (February 11, 2004)
The defendant adds the following accusations in his sur-reply: (1) Two named Assistant District Attorneys are "secretly withholding additional homicide bureau fact synopsis reports, as well as interview reports of the witnesses' statements, that have not been disclosed to the defendant or this Court"; (2) that members of the Kings County District Attorney's Office are "involved in a conspiracy to frame the defendant," and, further, that they are forging discoverable material; and (3) that the People are attempting to "mislead the Court" by their January 30, 2004 sur-response, in that the People attached an "erroneous cover sheet" for court minutes, dated October 11, 1995, while the actual trial date for which those minutes were recorded is October 5, 1994.
By letter dated March 9, 2004, the defendant repeated his claims that the People were submitting forged documents to the Court in response to his motion and denied he had submitted forged documents in his own motion papers. For their alleged actions, the defendant demands that this Court impose sanctions on the People.
DISCUSSION
FORGERIES ON PRIOR MOTIONS
Defendant's First CPL 440.10 Motion
By pro se papers dated August 27, 1998, the defendant moved this Court to vacate his judgment of conviction pursuant to C.P.L. § 440.10, alleging that the People had withheld Rosario material from the defense at trial. The defendant provided a documentary exhibit annexed to his papers, which he claimed to have discovered after trial, purporting to be a DD-5 police report prepared by Detective Patrick Adams. The DD-5 described Detective Adams conducting a neighborhood canvass with eyewitness Julio Aponte on June 17, 1993. The purported DD-5 also noted that Detective Adams had a photograph in his possession and that he displayed it to a Juan Rodriguez in the hope of locating the defendant.
The People provided a written response dated November 17, 1998, arguing that the defendant was not prejudiced by the non-disclosure of the DD-5 because the report did not state that the [*6]photograph had been displayed to Julio Aponte. Instead, the DD-5 stated that the photograph had been displayed to Juan Rodriguez who was only a potential witness.
On February 10, 1999, the People supplemented their initial response with additional papers asserting that the defendant never disclosed the manner in which he had obtained the purported DD-5 that he alleged was withheld from him at trial. The People also by their supplemental response, asserted that a review of the trial file indicated that the purported DD-5 annexed to the defendant's motion was neither part of the People's file nor the detective's case folder. The People requested summary dismissal of the defendant's motion, or in the alternative, a hearing on the issue of whether the purported DD-5 was forged.
On February 17, 1999, this Court ordered a hearing to determine whether the DD-5 submitted by the defendant in support of his motion was indeed a forgery. The Court ordered the defendant to submit evidence to establish how he had obtained the purported DD-5 and to provide evidence of its authenticity. Counsel was appointed to represent the defendant at this hearing. On March 3, 1999, the day the hearing was scheduled to commence, the defendant, after consulting with counsel, withdrew his motion to vacate his judgment of conviction.
Federal Writ of Habeas Corpus
By papers dated March 12, 1999, the defendant filed a petition for a writ of habeas corpus with the United States District Court for the Eastern District of New York. In his habeas corpus petition, the defendant argued the same claims of ineffective assistance of trial counsel, that this Court improperly bolstered the People's case, and that he did not receive the effective assistance of appellate counsel.
The People responded that the defendant's writ was untimely. The People argued that the one-year time deadline for the defendant to file his federal habeas corpus petition after his conviction became final should not be tolled during the period his CPL 440.10 motion was pending because that motion was based on a forged DD-5 submitted with his papers. The People also argued that the defendant's claims were meritless.
A hearing was conducted by the District Court on September 27, 2000 where testimony was received regarding the authenticity of the DD-5 submitted by the defendant.
By papers dated June 27, 2001, the defendant for the first time, asserted that his trial counsel failed to investigate an alibi witness, Richard Pipchinski.
On June 29, 2001, at a hearing before the District Court (Weinstein, J.), the defendant, represented by counsel, declined to testify in support of his petition, specifically as to the circumstances surrounding his obtaining the DD-5. At the time of the defendant's refusal to testify, a representative of the United States Attorney's Office was present in court to consider federal perjury and contempt charges should the defendant have elected to testify.
The District Court on June 29, 2001 specifically found that the DD-5 submitted by the defendant to this Court was a forgery. The court held:
The court finds that the DD-5 that the defendant relied upon was forged, and that the defendant was aware that it was forged and deliberately sought to mislead the state courts and the federal court in the habeas proceedings by its use.
The District Court noted that because it was based on a forgery, the defendant's withdrawn [*7]CPL 440.10 motion should not toll the one-year habeas statute of limitations. However, the Court in denying relief declined to rely on that procedural ground. Instead, the Court held the defendant's petition to be baseless. A certificate of appealability was granted on the issue of whether defense counsel at trial "met minimum constitutional standards in conducting the defense."
On October 4, 2002, the Court of Appeals vacated the District Court's decision and remanded the case for the District Court to place on the record its findings as to whether the trial counsel's failure to pursue an alibi defense amounted to ineffectiveness. Pratt v. Greiner, 306 F.3d 1190 (2d Cir. 2002).
On December 16, 2002, the District Court placed the defendant's habeas corpus petition on the inactive calendar in order for the defendant to exhaust in State court, his claim that defense counsel was ineffective for allegedly failing to investigate Richard Pipchinski as a purported alibi witness.
Defendant's Second C.P.L. 440.10 Motion
By pro se papers, dated November 27, 2002, to now "exhaust" his claim of ineffective trial counsel, the defendant moved to vacate his judgment of conviction, claiming that trial counsel was ineffective for failing to call to testify at trial, Richard Pipchinski, an alleged alibi witness, who would claim that the defendant was working in a catering hall in Queens.
Attached to the defendant's pro se motion papers was a letter purportedly written by his trial counsel, Steven J. Chaikin, Esq., informing the defendant that counsel intended to call the alleged alibi witness at trial. The defendant did not include this letter in any of his papers previously submitted on his federal writ of habeas corpus.
The People, however, attached to their response to this motion, an affirmation from Steven J. Chaikin, Esq., dated January 26, 2003, asserting that he was not the author of the letter submitted as an exhibit by the defendant which had numerous grammatical and spelling errors.
By a written decision, dated June 19, 2003, this Court denied the defendant's second motion to vacate the judgment without a hearing for the following reasons: (1) the trial record reflected that Pipchinski was actually listed as a potential prosecution witness; (2) defense counsel had, in fact served alibi notice naming two different potential alibi witnesses, Youshana Lewis and Sinclair Lewis, who would claim that the defendant was at the Lewis's home at the time of the crime; (3) the Lewis alibi was investigated by defense counsel and it was up to the defendant to inform his attorney that, instead, Pipchinski should be the alibi witness; (4) it was likely that the purported letter from the attorney was a forgery, given the surrounding circumstances, including the defendant's prior forgery of the police report; (5) the purported "Pipchinski" letter, dated September 18, 1993, submitted as an exhibit in support of the new alibi was also likely a forgery in that, among other things, it contradicted information in a police report concerning the time Pipchinski had said the defendant had left work (which would have given the defendant time to get to the crime scene and do the shooting, and which would explain why Pipchinski was listed as a potential People's witness) and a misspelling by Pipchinski of his own title, "Personal Manager" as opposed to "Personnel Manager" which coincided with one of the misspellings in the purported Chaiken letter which Chaiken affirmed he did not write; (6) the defendant's motion excerpted selected portions of the trial transcript where the alibi was discussed out of the presence of the jury in an attempt to mislead a reader of the motion into believing that defense counsel was referring to a decision not to call [*8]Pipchinski as an alibi witness, when, in fact, he was stating that the Lewis's would not be called as alibi witnesses. Accordingly, this Court found that the defendant was not denied effective assistance of counsel at his trial.
THE CURRENT MOTION
FINDINGS OF FACT & CONCLUSIONS OF LAW
 The defendant's current motion based on a claim of undisclosed documents cannot be considered in a vacuum, given the forged documents submitted on prior motions. Even notwithstanding the prior forgeries, it is clear from the documentary evidence presented on this motion that the homicide investigative report submitted by the defendant is a forgery and, therefore, the People cannot be held accountable for not disclosing something that did not exist.
The Homicide Investigative Report
The People's assertion that the homicide investigative report ("report") submitted by the defendant is a forgery is substantiated by the documentary evidence.
It is clear that someone cut a portion of text from a section of the subsequent report authored by ADAs Corrigan and Diaz on September 16, 1993 and "pasted" that "cut" portion on the section of the report authored by ADA Ng on June 3, 1993 to make it appear that the original report named Pratt when, in fact, it did not.
The Court notes that the forged Ng report naming Pratt does not state how his name was learned, a significant omission in a report concerning the facts of a recent homicide where the named perpetrator has not been arrested.
Contrary to the defendant's assertion in paragraph 2 of his reply, dated October 30, 2003, the lowercase initials "sfc" on the Ng report do not mean "Senior Officer in Charge" and apparently stand for the initials of the person who typed the report.
The Purported Letter by ADA Ng
The People's additional assertion, supported by Ng's affirmation, that the August 18, 2003 cover letter purportedly authored by ADA Ng which accompanied the forged report sent to Rubin is also a forgery is substantiated by the documentary evidence presented on this motion. The letter itself is highly questionable. It is unsigned. The writer did not use his full name, just his last name. It appears to have been typed on an electric or manual typewriter rather than by a word processor. The circumstances of the letter being mailed are also highly suspect. The document was directed to the FOIL Officer rather than the custodian of the case file. Both the sender and recipient of the report had offices in the same building, but, nevertheless, it was mailed with a cover letter. Also, the letter was mailed using a photocopied version of a mailing label used by the Kings County District Attorney's Office. In addition, there is no apparent explanation for why ADA Ng, who had nothing to do with this case after his initial report, would keep a copy of the report for 10 years and then coincidentally "return" it during litigation of post-conviction proceedings.
[*9]
The forgery of the Ng letter only adds additional credence to the People's claim that the defendant submitted a forged version of the Ng report on this motion.
Defendant's Other Claims 
The trial record supports the People's assertion that both the June 3, 1993 and September 16, 1993 homicide reports were turned over to defense counsel prior to trial. Opening statements were made on October11, 1994 and at page 2 of the minutes on that date, the trial ADA said "all homicide scratches" had been turned over. Defense counsel acknowledged receipt on page 3. The defense later called ADA Corrigan who prepared the second report as a defense witness.
The defendant's motion also claimed the People in one of their responses submitted as an exhibit an "erroneous cover sheet" for a volume of Court minutes for the opening day of trial which misstated the date to be October 11, 1995. This is the volume that contains the record of the disclosure to defense counsel of the homicide scratch reports at page 2. The original transcripts on file with the Court have been examined. Although the cover sheet for these minutes reads "October 11, 1995," this is merely a typographical error. There are 22 numbered pages in this volume which also contains the attorneys' opening statements and ends with the court stating, "call your first witness." The trial testimony begins at page 23 of the next volume which has the correct date of October 11, 1994 on its cover sheet.
CONCLUSION
The defendant's claim that Rosario material was improperly withheld is conclusively
refuted by documentary proof and the trial record, including the minutes of October 11, 1994. CPL 440.30 (4) (c). His allegation concerning the authenticity of the Ng report is conclusively contradicted by documents from the District Attorney's Office, and under the circumstances, there is no possibility at all that the defendant has submitted an authentic copy of that report. CPL 440.30 (4) (d).
Accordingly, the defendant's motion is denied.
EPILOGUE
This is the defendant's third CPL 440.10 motion to vacate his conviction. All of them have been based on forged documents. The District Attorney's Office has not charged the defendant with any crime for these acts, perhaps because he is already serving a life sentence.
Nevertheless, the Court believes some action should be taken to sanction the defendant and deter him from again submitting forged documents to the Court. Therefore, a copy of this decision is being sent to the Parole Board before which the defendant will eventually appear. When he does, the defendant should be asked to explain how these forged documents came into his possession, and in the absence of a satisfactory answer, he should not be released.
[*10]SO ORDERED
JOEL M. GOLDBERG
Judge