Joesun Kacrown KING, Petitioner,

v.

Raymond J. CUNNINGHAM,
Respondent.

No. 04 Civ. 02620(VM).

United States District Court,
S.D. New York.

Aug. 9, 2006.

Joesun Kacrown King, Petitioner, pro se, Woodbourne, NY.

### DECISION AND ORDER

MARRERO, District Judge.

*Pro se* petitioner Joesun Kacrown King ("King") filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (" § 2254") in response to a court order directing King to amend an earlier petition submitted on December 22, 2003 ("Original Petition").[1]

Upon a plea of guilty, King was convicted in State Supreme Court, New York County, of Assault in the First Degree and was sentenced to a determinate prison term of nine years. In the instant petition (the "Amended Petition"), King argues that (1) he did not consent to an "illegal and harsh" sentence of nine years' imprisonment and (2) he should have been given a competency evaluation pursuant to N.Y.Crim. Proc. Law § 730.30 (McKinsey, 2006). For the reasons set forth below, the Court denies King's petition.

### I. BACKGROUND[2]

On March 3, 1999, King was arrested after repeatedly firing a beebee gun in a

1. Order of the Hon. Michael B. Mukasey, Chief Judge, dated April 7, 2004 ("April 7, 2004 Order").

2. The factual summary below derives from the parties' representations contained in the following submissions, as well as exhibits attached or documents filed pursuant to these submissions: Petition for Writ of Habeas Corpus, dated December 22, 2003 ("Original Pet."); Petition for Writ of Habeas Corpus, dated May 5, 2004 ("Amended Pet."); Motion for Relief of Sentence, dated February 6, 2006 ("Mot. for Rel."); Respondent's Affidavit in

New York City subway car. While King's fire was directed at fellow passenger Gene Serrano, one of the beebee pellets hit another passenger, Becky Kozer, permanently damaging her eyesight. An indictment filed on March 23, 1999, charged King with one count each of Assault in the First Degree in violation of New York Penal Law ("NYPL") § 120.10(1), Assault in the Second Degree, NYPL § 120.05(2), and Criminal Possession of a Weapon in the Third Degree, NYPL § 265.02(1).

King entered a plea of guilty on December 6, 1999, to the assault charge, which alleged that with intent to cause serious physical injury to another, he injured Becky Kozer by means of a dangerous instrument. King, who had two previous larceny convictions, was adjudicated as a predicate felony offender. As such, King's sentence range was eight to twenty-five years' imprisonment. On December 20, 1999, he was sentenced to nine years' imprisonment. King was represented by counsel at his plea and sentencing hearings.

Two psychiatrists, one retained by the defense and the other by the prosecution, examined King and issued reports on his mental condition prior to the plea hearing. Both psychiatrists noted King's history of mental illness. (After age seventeen, King was hospitalized multiple times for chronic schizophrenia.) Robert Goldstein ("Goldstein"), King's psychiatrist, concluded that at the time of the incident on the subway King lacked substantial capacity to know or appreciate the wrongfulness of his conduct. Goldstein found that King, under delusions of persecution, fired the beebee gun in self-defense. On the other hand, the prosecution's psychiatrist, David Web-er ("Weber"), concluded that, mental illness notwithstanding, King possessed substantial capacity to know and appreciate that his conduct was wrong.

On January 6, 2000, King filed a motion *pro se* in State Supreme Court, New York County, to vacate the judgment of conviction pursuant to N.Y.Crim. Proc. Law § 440.10 (" § 440.10"). King checked off the following grounds for relief from a template § 440.10 motion: (1) lack of jurisdiction of person or subject matter, (2) material evidence known by prosecutor or court to be false before judgment, (3) existence of mental disease or defect making defendant incapable of understanding proceedings, and (4) newly discovered evidence. On April 22, 2000, Judge Carol Berkman denied King's § 440.10 motion ("First § 440 Motion") without a hearing. The court quickly disposed of King's jurisdictional and evidentiary claims and found his incapacity claim "belied by the record" because at the plea proceedings King was "fully allocuted," "did not display any confusion," and "was able to appropriately answer" the questions posed him. (*People v. King*, No.1921–99 (N.Y.Sup.Ct.2000) at 3, attached to Resp. Aff. as Exhibit C.) King did not seek leave to appeal the court's decision.

In November, 2000, King, represented by counsel from the Legal Aid Society, appealed his conviction to the New York Supreme Court Appellate Division, First Department (the "Appellate Division"). King, citing N.Y.Crim. Proc. Law §§ 450.10 and 470.15(6)(b), argued that his sentence should be reduced in the interest of justice because his conduct resulted from untreated mental illness. On March 14, 2002, the Appellate Division unani-

Opposition to Petition for a Writ of Habeas Corpus, dated February 15, 2006 ("Resp.Aff."); Respondent's Memorandum of Law in Opposition to Petitioner's Application for a Writ of Habeas Corpus, dated February 15, 2006 ("Resp.Mem."). Except where specifically quoted or otherwise cited, no further reference to these documents will be made.

mously affirmed King's conviction without an opinion. *People v. King*, 292 A.D.2d 882, 739 N.Y.S.2d 661, 661 (App. Div., First Dep't.2002). On June 17, 2002, King's request for leave to appeal to the New York Court of Appeals was denied.

King filed a *pro se* petition for a writ of habeas corpus ("First Petition") pursuant to 28 U.S.C. § 2254 in the Eastern District of New York on November 18, 2002.[3] That petition, later transferred to this District, was amended on April 22, 2003. In the amended First Petition, King argued for a sentence reduction because he was innocent and the shooting was an accident.

On November 6, 2003, Chief Judge Mukasey dismissed the amended First Petition for failure to specify grounds for relief and failure to satisfy the state exhaustion requirement under 28 U.S.C. § 2254(b). The court did not issue a certificate of appealability, and the Second Circuit Court of Appeals dismissed King's appeal "with prejudice" for failure to file a motion for a certificate of appealability pursuant to Local Rule 22(a).

On January 22, 2003, King filed a second *pro se* petition ("Second Petition") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the Eastern District of New York.[4] A liberal reading of this petition indicates that King argued for a lesser sentence and for the chance to testify against the victim, Becky Kozer. In this submission, King attached a copy of the plea and sentencing transcripts with his comments and edits.

On May 5, 2003, Chief Judge Mukasey dismissed the Second Petition as duplicative of the First Petition and did not issue a certificate of appealability because King failed to make a "substantial showing of the denial of a constitutional right." (Order of the Hon. Michael B. Mukasey, Chief Judge, at 2, dated May 5, 2003, attached as Exhibit N to Resp. Aff.) However, King appealed, and the Second Circuit dismissed his appeal with prejudice for noncompliance with Local Rule 22(a).

King moved for a second time on January 25, 2003, to vacate his conviction pursuant to § 440.10 ("Second § 440 Motion"). Again reading that *pro se* motion liberally, it argued that: (1) King did not want to plead guilty; and that (2) his sentence should be reduced because he is not guilty. On March 13, 2003, the Supreme Court, New York County denied the Second § 440 Motion without a written a decision. King did not seek leave to appeal to the Appellate Division.

On December 28, 2004, King moved to set aside his sentence pursuant to N.Y.Crim. Proc. Law § 440.20 ("Third § 440 Motion"). In essence, as grounds for relief, that motion asserted that: (1) King's lawyer told him he would receive a lesser sentence; (2) his sentence and post-release supervision are excessive; (3) the reason he pled guilty instead of going to trial was ineffective assistance of counsel; and (4) he should have been hospitalized for mental illness, not imprisoned.[5] The State Supreme Court, New York County, denied the motion on the grounds that

---

**3.** While the Court does not have a record of this petition, its existence and content are not contested by King or Respondent Raymond Cunningham ("Respondent" or "the State").

**4.** The petition was later transferred to the Southern District of New York.

**5.** King submitted additional materials with this motion, including six documents, which are apparently support briefs, and a completed, sample motion to vacate judgment alleging "inceticent of counsoul [sic]" and "being miss lead [sic] by the judge." (Materials Supporting King's Third § 440 Motion, dated Dec. 28, 2004, attached as Exhibit R to Resp. Aff.)

King did not raise a legal challenge to his sentence and was deemed competent by his counsel and the trial court.

On December 22, 2003, King filed the Original Petition asserting as grounds for relief: (1) his "constitutional right," (2) ineffective assistance of counsel, (3) neither the victims nor any witnesses spoke to him in court about what happened, and (4) he takes medication that makes him confused.[6] On April 7, 2004, Chief Judge Mukasey ordered King to amend his petition "to clearly state" any grounds in support of his claim of "unlawful detention and the facts supporting each ground." (April 7, 2004 Order, at 1–2.) Noting that the petition might be premature or untimely, the court directed King to detail his state post-conviction filings and explain why his submission was not barred by the statute of limitations. The court ordered the amended petition to entirely replace the Original Petition and stayed proceedings sixty days or until compliance with the Order.

On May 5, 2004, King filed the instant Amended Petition pursuant to the April 7, 2004 Order. This petition alleges and argues that: (1) King's sentence is excessive in violation of the Eighth Amendment; (2) King's plea was not knowing and voluntary; and (3) King's right to due process was violated because the trial court did not order an evaluation of his competency to plead guilty.[7] On September 30, 2004, Chief Judge Mukasey reassigned King's case to this Court.

On February 6, 2006, King moved this Court to issue an order "of relief of sentence." [8] In his motion, King's asserts the following grounds for relief: (1) ineffective assistance of counsel, (2) Confrontation Clause violation because he could not confront the witnesses against him, (3) exces-

---

**6.** The description above represents the Court's interpretation of King's following claims: (1) "My constitutional right"; (2) "Innafectness [sic] of consoule helping [sic]"; (3) "No witnesses [sic] spoke to me about the crimes I did. The two people that got hurt did not speak to me in court about what happen [sic]"; and (4) "I take medication were [sic] I'm confused if I'm recorded on casset [sic] tape and I lose my thinking sometimes." (Original Petition at 4.)

**7.** Because King is a *pro se* petitioner, his submissions are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (*quoting Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). A court must "read the pleadings of a *pro se* plaintiff liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (*citing Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)).

Mindful of this relaxed standard of pleading, the Court views the three claims above as the strongest legal formulation of King's following statements: (1) "Petitioner claims the

sentence he is under is harsh and illegal due to the fact he is under an unfair and improper prison term." (Amended Petition at 4.); (2) "Petitioner told his attorney at trial court level he would accept eight years for the Class B felony of assault with pellet gun including all included offenses but was given nine years." (*Id.* at 4.); and (3) "Petitioner is under psychotropic medication and has a history of mental illness. Petitioner should have been afforded a 730 evaluation and placed in a mental institution for his treatment. Being placed in prison for an assault with a pellet gun for nine years is a travesty of justice. Please either vacate the conviction or reduced [sic] the sentence." (*Id.* at 4–5.)

**8.** While this motion was not served on Respondent, service is not necessary to the Court's disposition of King's application as the Court is denying King's petition in its entirety on the merits. The Court also notes that pursuant to Rule 4(b) of the Rules Governing Section 2254 Cases, the district court judge must dismiss the petition prior to ordering the government to respond if "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Habeas Corpus Rule 4(b).

sive sentence, and (4) plea not entered knowingly and voluntarily.[9] Because two of these claims are already asserted in King's Amended Petition, the Court will separately review only King's ineffective assistance of counsel and Confrontation Clause claims. For the reasons set forth below, King's Amended Petition and motion are denied.

## II. DISCUSSION

### A. THE AMENDED PETITION SHOULD NOT BE CONSTRUED AS A "SECOND OR SUCCESSIVE" PETITION

■ The Court must first consider whether or not King's Amended Petition should be construed as a "second or successive" petition subject to the more stringent requirements of 28 U.S.C. 2244(b).[10]

"[A] § 2255 petition [for a writ of habeas corpus] will not be considered second or successive unless a prior § 2255 petition was adjudicated on the merits." *Villanueva v. United States*, 346 F.3d 55, 60 (2d Cir.2003).[11] Chief Judge Mukasey's April 7, 2004 Order stated the Original Petition "may be" premature or untimely and directed King to amend his petition for failure to clearly state grounds for relief. (April 7, 2004 Order at 1–2, 4.) Thus, this Order did not constitute a merits determination. *See Slack v. McDaniel*, 529 U.S. 473, 485–486, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) ("A habeas petition filed in the district court after an initial petition was unadjudicated on its merits and dismissed for failure to exhaust state remedies is not a second or successive petition.")[12] While dismissal of a petition as untimely is an

9. Again, the Court must review this motion under the relaxed, *pro se* pleading standard, and thus, it finds that the claims set forth above are the strongest legal formulation of King's following statements in the Motion for Relief: (1) "incifecent counsoul [sic]," (2) "I could not confront the witniss [sic] nor the [d]efedants in the [c]ourt [r]oom," (3) "I had to take harsh sentence of 9 years and 5 years supervistion [sic]," and (4) "I didn't understand my rights." (Mot. for Rel. at 2.)

10. Under 28 U.S.C. § 2244(b)(1), a claim presented in a "second or successive" habeas corpus application "that was presented in a prior application shall be dismissed." "Second or successive" applications must first be authorized by a court of appeals, which shall determine whether "the application makes a prima facie showing that the application satisfies the requirements of this subsection." 28 U.S.C. § 2244(b)(3)(c).

11. While *Villanueva* involved 28 U.S.C. § 2255 (available to prisoners in custody pursuant to federal, not state, judgments), "[e]ach part of the analysis explained in *Villanueva* is equally applicable to challenges to state convictions under § 2254. The federal habeas statute makes no material distinction between petitions under § 2254 and § 2255 in defining a 'second or successive' petition."

*Murray v. Greiner*, 394 F.3d 78, 81 (2d Cir. 2005).

12. The Court will evaluate only whether or not King's Amended Petition is "second or successive" vis-a-vis the Original Petition. There could be further dispute because the Amended Petition was filed after King's First Petition and Second Petition were filed and dismissed. However, the Court notes that Chief Judge Mukasey, who dismissed King's First and Second Petitions for failure to provide a constitutional basis for the petitions and failure to exhaust state remedies, did not construe the later-filed Original Petition as "second or successive." Indeed, he did not raise the issue of "second or successive" applications in his April 7, 2004 Order. Moreover, even if the Court were to view Chief Judge Mukasey's dismissals of King's First, Second and/or Original Petitions as merits adjudications and, hence, view the instant petition as "second or successive," it could still dismiss the Amended Petition because transfer to the Second Circuit for consideration under 28 U.S.C. § 2244(b)(3) would not be in the interest of justice. *See* 28 U.S.C. § 1631 (providing that transfer to cure want of jurisdiction done "if it is in the interest of justice"); *Terrence v. Artus*, No. 05 Civ. 5994, 2005 WL 1705299, at *2 (S.D.N.Y. July 19, 2005) (dismissing a "second or successive"

adjudication on the merits, the Order did not make a final determination on timeliness. *See Murray v. Greiner,* 394 F.3d 78, 81 (2d Cir.2005) ("[D]ismissal of a § 2254 petition for failure to comply with the one-year statute of limitations constitutes an adjudication on the merits....") The April 7, 2004 Order merely concluded that the petition *"may* be untimely" and directed King "to detail why the statute of limitations should not bar the instant petition." (April 7, 2004 Order at 4–5.) [13] Because the Amended Petition was filed pursuant to the April 7, 2004 Order, the Court concludes it is not "second or successive" within the meaning of 28 U.S.C. § 2244(b).

Moreover, the April 7, 2004 Order clearly indicated that King's Amended Petition "will entirely replace the original petition." Following a similar order from Chief Judge Mukasey, a "replacement" § 2254 petition was not considered "second or successive" in *Cuevas v. New York,* No. 01 Civ. 2550, 2002 WL 206985, at *1 (S.D.N.Y. Feb. 11, 2002) (denying petition filed pursuant to Order from the Chief Judge Mukasey stating "amended petition would replace the original petition in all respects" without considering the issue of "second or successive" applications).

The Second Circuit has found that a motion to amend a habeas petition, as long as it is filed before the district court adjudicates the merits of the petition, is not a "second or successive" petition. *Littlejohn v. Artuz,* 271 F.3d 360, 363 (2d Cir.2001); *see also Thristino v. United States,* 379 F.Supp.2d 510, 514 (finding a § 2255 motion filed prior to the adjudication of the initial § 2255 to be a motion to amend, not

a second or successive petition). As discussed above, there has been no merits adjudication of King's Original Petition. Thus, if King's Amended Petition is construed as a motion to amend, it is also avoids being designated "second or successive." However, having already decided that King's Amended Petition is not "second or successive" the Court need not decide whether to construe the petition as a "motion to amend" rather than as an independent, new petition.

As for King's Motion for Relief of Sentence ("Motion for Relief"), it also cannot be considered a "second or successive" petition because (1) first and foremost, it is not a petition for a writ of habeas corpus and (2) even if it were a habeas petition, as previously discussed, King's Original and Amended Petitions have not been adjudicated on the merits.

The Motion for Relief could be construed as a motion to amend the Amended Petition as it was filed before an adjudication on the merits of the Amended Petition. Interpreting King's Motion for Relief and, as discussed above, Amended Petition as motions to amend, does affect the Court's evaluation of the timeliness King's submissions. Untimely amendments to habeas corpus petitions can circumvent the one-year statute of limitations period by "relating back" to the date of the original petition. *See* Fed R. Civ. P. 15(c)(2); *Mayle v. Felix,* 545 U.S. 644, 125 S.Ct. 2562, 2569, 162 L.Ed.2d 582 (2005). The State has argued that King's Amended Petition is untimely and does not relate back, but as discussed in Sec-

---

§ 2254 petition after finding it was not in the interest of justice to transfer the petition to the Second Circuit because the petition was untimely and petitioner's claim without merit).

**13.** Also indicating that it did not make a merits determination, the April 7, 2004 Order cited *Acosta v. Artuz,* 221 F.3d 117, 124 (2d Cir.2000), for the proposition that petitioner is "entitled to notice and opportunity to be heard before dismissing [a] petition as time-barred." (April 7, 2004 Order at 5.)

tion C, the Court will not decide this issue. Instead of unraveling this and other complex procedural issues presented by King's submissions, the Court prefers to address the substance of King's claims, denying them as without merit.

## B. STANDARD OF REVIEW

A habeas petitioner in custody pursuant to a state court judgment is entitled to habeas relief only if he can show his detention violates the United States Constitution or laws or treaties of the United States. See 28 U.S.C. § 2254(a). Pursuant to 28 U.S.C. § 2254(d)(1), which was codified in its current form by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (April 24, 1996), this Court may grant habeas relief to a petitioner whose claims were decided on the merits in a state court proceeding only if the state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C § 2254(d).

However, as discussed below in Section D, King has failed to exhaust the remedies available to him in state court. The Court will review these unexhausted claims under a heightened de novo standard of review as they are meritless under this test or the more deferential AEDPA standard discussed above. See Brown v. Breslin, No. 02 Civ. 6044, 2003 WL 22952841, at *5 (E.D.N.Y. Nov.26, 2003) (reviewing most of petitioner's claims under a de novo stan-

dard of review after determining that at least one of the claims was unexhausted and all claims were meritless under any standard of review).

## C. TIMELINESS

Pursuant to the AEDPA, a state prisoner's petition for a writ of habeas corpus is subject to a one-year statute of limitations. See 28 U.S.C. § 2244(d)(1).[14] To determine the timeliness of the instant petition and motion, this Court must first establish when the "clock" started running for the purpose of the statute of limitations. While 28 U.S.C. § 2244 provides that the limitation period shall run from the latest of four possible dates, the only date relevant here is "the date on which the judgment [of a state court] became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

King appealed his sentence to the Appellate Division, which affirmed his conviction, and on July 17, 2002, a judge of the New York Court of Appeals denied leave to appeal. On September 16, 2002, ninety days after the Court of Appeals denial, King's time to seek a writ of certiorari to the United States Supreme Court expired, and the state judgment against him became final. See Valverde v. Stinson, 224 F.3d 129, 132 (2d Cir.2000) (stating defendant's "conviction became final .... when the ninety-day period to seek direct review from the U.S. Supreme Court by way of certiorari expired"). Hence, upon first glance, the statute of limitations for the instant case expired on September 16, 2003. However, a timeliness inquiry under the AEDPA does not end there.

---

**14.** A one-year statute of limitations also applies to petitions filed by federal prisoners. See 28 U.S.C. § 2255.

■ The AEDPA statute of limitations can be tolled pursuant to 28 U.S.C. § 2244(d)(2), which provides: "[t]he time during which a properly filed application for State post-conviction or other collateral review . . . is pending shall not be counted toward any period of limitation under this subsection."[15] The collateral attacks on King's conviction in state court tolled his limitation period 216 days, from September 16, 2003 to April 19, 2004.[16] Yet, King filed his Amended Petition on May 5, 2004, and his Motion on February 6, 2006.

While it would appear that the Amended Petition is untimely, upon further analysis the situation becomes more complex. The Court notes that the April 7, 2004 Order stayed proceedings in King's case prior to the expiration of the limitations period on April 19, 2004. Furthermore, if construed as motions to amend, the Amended Petition and Motion for Relief may "relate back" to the Original Petition, and therefore be timely. *See* Fed.R.Civ.P. 15(c)(2);

*Mayle,* 125 S.Ct. at 2569. The State argues that King's instant petition does not relate back under *Mayle* because the claims are not " 'tied to a common core of operative facts' and are different in 'both time and type' as those asserted in his third original petition." (Resp. Mem. at 17.) The *Mayle* Court rejected relation back of a claim when the common "conduct, transaction or occurrence" at issue was nothing more than the same "trial, conviction or sentence." 125 S.Ct. at 2574. Here, King's claim that he should have been afforded a competency evaluation and the claim in his Original Petition that he takes medicine that makes him confused share more than a common conviction: they both arise from King's mental illness. However, because the Court finds that King's Amended Petition and Motion for Relief should be dismissed on the merits, it need not rule on the timeliness of the instant submissions.[17]

15. Under the prison mailbox rule, a *pro se* petitioner's delivery of his application to prison authorities for forwarding to state court starts tolling the § 2244(d) limitations period. *See Fernandez v. Artuz,* 402 F.3d 111, 116 (2d Cir.2005) (prison mailbox rule of *Houston v. Lack,* 487 U.S. 266, 270, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), used to determine when a petition is "properly filed," and, hence, when the limitations period starts tolling). The word "pending" designates the "end point" of the tolling period, *Fernandez,* 402 F.3d at 116, and "an application for state review is 'pending' until it has achieved final review through the state's post-conviction procedures." *Foster v. Phillips,* No. 03 Civ. 3629, 2005 WL 2978686, at *4 (S.D.N.Y. Nov. 7, 2005) (*citing Carey v. Saffold,* 536 U.S. 214, 220, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002)).

16. Only King's First and Second § 440 Motions toll the limitations period. The First § 440 Motion, pending from January 6, 2000, until May 22, 2000, tolled the statute of limitations 137 days, whereas the Second § 440 Motion, pending from January 25, 2003, until April 14, 2003, tolled the statute of limitations

seventy-nine days. As King did not seek leave to appeal the denials of his § 440.10 motions, these tolling periods ended upon expiration of the thirty day period to seek leave to appeal. *See* N.Y.Crim. Proc. Law § 460.10(4)(a) (providing after "service upon the defendant of a copy of the order sought to be appealed," he/she has thirty days to seek leave to appeal). King's Third § 440 Motion does not qualify for AEDPA tolling because it was filed after the expiration of the limitations period. *See Scarola v. Kelly,* No. 99 Civ. 4704, 2001 WL 849449, at *3 (S.D.N.Y. July 27, 2001) ("[T]olling extends the time to file a habeas petition by delaying the expiration of the statutory period, but has no effect once the period has expired.")

17. Other courts have adopted the same course of action and denied claims in motions to amend habeas petitions on the merits instead of sorting through thorny procedural issues presented by "relation back." *See Fama v. Comm'r Corr. Servs.,* 235 F.3d 804, 816 (2d.Cir.2000); *Newton v. Coombe,* No. 95 Civ. 9637, 2001 WL 799846, at *10 (S.D.N.Y. July 13, 2001).

## D. EXHAUSTION

■ This Court can grant a § 2254 writ of habeas corpus only if the petitioner first exhausts all available state remedies.[18] 28 U.S.C. § 2254(b)(1). The Second Circuit employs a two-prong test to determine whether a habeas claim is exhausted. *See Mercedes v. Herbert,* No. 01 Civ. 1359, 2002 WL 826809, at *4 (S.D.N.Y. Apr. 30, 2002). First, a petitioner must present "the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it." *Cotto v. Herbert,* 331 F.3d 217, 237 (2d Cir.2003) (citation omitted). Thus, "a state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

■ Second, a habeas petitioner must have " 'fairly presented' to the state courts the 'substance' of his federal habeas corpus claim." *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982). A state defendant may "fairly present" his constitutional claim to a state court in a number of ways, including:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye v. Attorney Gen. of the State of New York,* 696 F.2d 186, 194 (2d Cir.1982) (*en*

banc ); *see also Petrucelli v. Coombe,* 735 F.2d 684, 688 (2d Cir.1984).

While the State does not challenge the exhaustion of the claims in King's Amended Petition, the Court finds all the claims in the Amended Petition and Motion for Relief unexhausted.[19]

■ The Court finds King's Eighth Amendment "excessive sentence" claim unexhausted because the constitutional nature of the claim was not "fairly presented" to the state courts on direct appeal. King's Appellate Division brief presented his excessive sentence claim in terms of state law, invoking the power of a state appellate court to reduce sentences in the interest of justice under C.P.L. § 470.15(6)(b). This Court and other courts in this district have found that a prisoner's reliance on a state procedural law granting courts discretionary authority to reduce sentences does not "fairly present" his/her constitutional claim in state court. *See Acosta v. Giambruno,* 326 F.Supp.2d 513, 521–522 (S.D.N.Y.2004); *Grant v. Berbary,* No. 99 Civ. 12017, 2002 U.S. Dist. LEXIS 6379, at *9 n. 3 (S.D.N.Y. Jan. 18, 2002); *Castillo v. Abrams,* No. 88 Civ. 1165, 1988 WL 96026, at *2 (S.D.N.Y. Aug. 24, 1988) ("Asking a state court to use its discretionary authority to reduce a sentence [under N.Y.Crim. Proc. Law § 470.15(2)(c) and 3(c) ], without more, is not enough to alert the court that the claim is of constitutional dimension.") However, when a prisoner appears to have simply asserted that his sentence was "excessive," courts have been willing to find exhaustion of an Eighth Amendment claim in state court. *See, e.g., Diaz v. LeFevre,* 688 F.Supp. 945, 947 (S.D.N.Y.1988).

---

**18.** However, this Court is not precluded from denying a petition on the merits regardless of whether all state remedies were exhausted. *See* 28 U.S.C. § 2254(b)(2).

**19.** [Missing text]

As for King's remaining claims, even if the Court finds that King fairly presented their constitutional nature, they are unexhausted because he did not present them to the "highest state court" capable of reviewing them.[20] Because King did not seek leave to appeal the denials by the State Supreme Court, of his two § 440.10 motions and one § 440.20 motion, any claims presented by these motions are unexhausted. *See Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir.1990) (finding petitioner's claim unexhausted for failure to seek leave to appeal the denial of his § 440.10 motion).

King's failure to exhaust the claims in his Amended Petition and Motion for Relief is not fatal to this Court's disposition of his application on the merits. Because the Court finds all of King's claims not viable, it has the discretion to dismiss the petition on the merits notwithstanding King's failure to exhaust his claims in state court. *See* 28 U.S.C. § 2254(b)(2); *Pratt v. Greiner*, 306 F.3d 1190, 1197 (2d Cir.2002). While § 2254(b)(2) is normally invoked to deny mixed petitions (petitions containing exhausted and unexhausted claims), the language of the statute does not preclude denying a petition with only unexhausted claims on the merits.[21] At least one district court judge in this Circuit has denied a petition containing possibly only unexhausted claims on the merits, and the Tenth Circuit has sanctioned this approach. *See Terrence v. Senkowski*, No. 97 Civ. 3242, 1999 WL 301690, at *5 n.4 (S.D.N.Y. May 12, 1999) (denying a habeas petition on the merits despite petitioner's failure "to exhaust his state remedies on the majority, if not all his claims"); *Moore v. Schoeman*, 288 F.3d 1231, 1232 (10th Cir.2002) (finding that a district court has the option to deny an entire petition, containing only unexhausted claims, on the merits).

In the interest of addressing the merits issues of King's procedurally complex petition, this Court will invoke its statutory discretion and deny King's claims on the merits despite his failure to exhaust state remedies.

## E. ASSERTED GROUNDS FOR HABEAS RELIEF

### 1. Excessive Sentence

 A sentence "within the range prescribed by state law" does not present a "federal constitutional issue." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir.1992) Thus, issues of sentencing rationales and ranges are "generally a policy choice to be made by state legislatures, not federal courts." *Ewing v. California*, 538 U.S. 11,

---

**20.** The Court reads King's direct appeal to have raised only a reduction of sentence claim. Reading King's collateral attacks on his conviction and sentence liberally, they could have possibly "fairly presented" some of his four remaining claims on habeas review: that (1) he did not knowingly and voluntarily plead guilty, (2) the trial court should have ordered a competency evaluation, (3) he received ineffective assistance of counsel and (4) he was unable to confront the witnesses against him. However, the Court will not decide this matter as all claims presented by these collateral attacks are unexhausted for failure to present them to the "highest state court capable of reviewing" them.

**21.** When confronted with a mixed petition a district court can also: "(1) stay the proceeding until such time as the petitioner has returned to state court and exhausted his previously unexhausted claims, (2) dismiss the 'mixed' petition, without prejudice, until the claims have been exhausted in state court, unless the claims could not be raised following exhaustion pursuant to the one year statute of limitations prescribed by the AEDPA; [or] (3) give the petitioner an opportunity to withdraw the unexhausted claim or claims...." *Harris v. Artus*, No. 06 Civ. 1337, 2006 U.S. Dist. LEXIS 36708, at *7–8 (E.D.N.Y. June 1, 2006).

25, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003). Accordingly, "a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate" because "the decision of a sentencing ... [court] is entitled to substantial deference, . . . ." *United States v. Persico*, 853 F.2d 134, 138 (2d Cir.1988) (citation omitted); *see also Hemphill v. Senkowski*, No. 02 Civ. 7093, 2004 WL 943567, at *11 (S.D.N.Y. May 3, 2004).[22]

King pled guilty to Assault in the First Degree, which under NYPL § 120.10(1) is a Class B violent felony. The State Supreme Court indicated during the plea hearing that because King was a predicate felony offender the sentencing range applicable to his Class B violent felony was eight to twenty-five years imprisonment. King's plea-bargained sentence of a determinate nine year term of imprisonment falls squarely within the range prescribed by New York law and therefore poses no federal constitutional violation.

### 2. *Knowing and Voluntary Plea*

■■■ "A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States*, 523 U.S. 614, 618, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (*quoting Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct.

1463, 25 L.Ed.2d 747 (1970)). A plea is voluntary if it is entered by an individual "fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel," unless "induced by threats ... misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper . . . ." *Id.* at 755, 90 S.Ct. 1463 (internal citation omitted).

■■■ A defendant's erroneous, subjective ideas, produced by conversations with his counsel, "in the absence of substantial objective proof showing that they were reasonably justified, do not provide sufficient grounds upon which to set aside his guilty plea." *U.S. ex rel. Curtis v. Zelker*, 466 F.2d 1092, 1098 (2d Cir.1972) (*citing United States ex rel. LaFay v. Fritz*, 455 F.2d 297 (2d. Cir.1972) and *United States ex rel. Scott v. Mancusi*, 429 F.2d 104 (2d Cir.1970)). Although prisoners frequently claim that their guilty pleas were based on misunderstandings, "induced by discussions" with their lawyers, that they "would receive a lesser sentence than that ultimately imposed ..., this has repeatedly been held insufficient to warrant the issuance of a writ." *Curtis*, 466 F.2d 1092 at 1098. "When a habeas petitioner asserts that a plea was based on such a misunderstanding, 'to justify the

---

**22.** In *Lockyer v. Andrade*, 538 U.S. 63, 72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), the Supreme Court acknowledged that "in determining whether a particular sentence for a term of years can violate the Eighth Amendment, we have not established a clear or consistent path for courts to follow;" yet, it concluded that it has been "clearly established" by the Supreme Court that "a gross proportionality principle is applicable to sentences for terms of years." King's sentence of nine years imprisonment for a first degree assault while he qualified as a violent offender does not remotely approach the realm of grossly disproportionate punishments. *See*

538 U.S. at 67–68, 77, 123 S.Ct. 1166 (upholding a California appellate court's finding that two sentences, under California's two strikes law, of 25 years to life imprisonment for two counts of petty theft were constitutional under the Eighth Amendment); *Harmelin v. Michigan*, 501 U.S. 957, 1001–1004, 111 S.Ct. 2680, 115 L.Ed.2d 836 (Kennedy, J., concurring in part and concurring in judgment) (a sentence of life in prison without parole for possession of more than 650 grams of cocaine did not violate the Eighth Amendment's protection against grossly disproportionate sentences).

issuance of a federal writ vacating his guilty plea, the petitioner must bear the burden of showing that the circumstances as they existed at the time of the plea, judged by objective standards, reasonably justified his mistaken impression.'" *Scales v. N.Y. State Division of Parole,* 396 F.Supp.2d 423, 433–434 (S.D.N.Y.2005) (*quoting Curtis,* 466 F.2d 1092 at 1098).

■■■ Here, King has not met the burden of showing that the circumstances as they existed at the time of the plea, judged by objective standards, reasonably justified his mistaken impression; indeed, he makes conclusory statements about the final sentence imposed but has not come forth with any evidence supporting his claim. Moreover, the Court notes that (1) the record does not indicate that King informed his counsel he would accept eight years imprisonment and (2) even if he informed his counsel to this effect, the circumstances of his plea did not objectively justify his mistaken impression regarding his sentence. The trial court clearly communicated the sentence to King, stating, "I am promising you nine years. Do you understand the promise?" (Plea Transcript ("Plea Tr.") at 8, dated Dec. 6, 1999, submitted pursuant to Resp. Aff.) At first, King responded "No," to the Court's inquiry regarding his understanding of the sentence and asked, "Is that final?" (*Id.*) The court clarified, "I am promising you nine years. I will give you nine years. You do most of that. When you get out, you get supervised for a while," and asked King, "What else is it you don't understand?" (*Id.* at 8–9.) To this King replied, "How come I have to do nine years if I am going to be supervised?" (*Id.* at 9.) The court explained to King that his punishment was due to his actions that injured Becky Kozer, and after going through this explanation the court stated, "That is why, do you understand?" (*Id.*) King responded, "Yes." (*Id.*)

On this basis of the record, one reading of King's argument is that he may have subjectively misunderstood his sentence; however, (1) the record does not indicate that this misunderstanding was based on conversations with his counsel [23] and (2) the circumstances of King's plea, viewed objectively, did not leave any doubt regarding the length of the sentence the trial court imposed. The trial court reiterated several times that King's sentence would be nine years' imprisonment. Like the petitioner in *Scales,* King's misunderstanding was not based on a misrepresentation and was not, in any way, objectively reasonable.[24]

### 3. *Competency Evaluation*

■■■ A defendant's right to due process is violated if he is convicted while legally incompetent. *Pate v. Robinson,* 383 U.S. 375, 378, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). The test for competence to stand trial is "whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'" *Godinez v.*

---

**23.** The plea transcript indicates that King's counsel only spoke once during the discussion regarding the length of his sentence. He asked the trial court to clarify the sentence reduction for good behavior, saying "I thought it [the amount of sentence served] was 85 percent." (*Id.* at 10.)

**24.** In *Scales,* petitioner alleged that his guilty plea was conditioned upon the promise that he would be returned to parole. However, in that case, this Court found that the Division of Parole did not misrepresent the terms of defendant's plea agreement and that, even if it had, reliance on such a misrepresentation would have been objectively unreasonable. *Scales,* 396 F.Supp.2d at 434.

*Moran,* 509 U.S. 389, 396, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993)(*quoting Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)(per curiam)). The standard for competency to plead guilty is no higher than the standard for competency to stand trial. *See Godinez,* 509 U.S. at 398, 113 S.Ct. 2680.[25]

■ The State contends that King forfeited his mental competency claim upon entry of a guilty plea. *See Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) (finding that following a plea of guilty, knowingly and voluntarily entered, a defendant may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.") The Court finds Respondent's argument fundamentally flawed. As the Supreme Court has stated: "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial." *Pate,* 383 U.S. at 384, 86 S.Ct. 836. While *Pate* involved a defendant who failed to request a competency hearing at trial, its logic extends to guilty pleas.[26] "Competency" and "knowing and intelligent" waiver are two separate inquiries, both necessary components of a valid

guilty plea. *See Godinez,* 509 U.S. at 400, 113 S.Ct. 2680.[27]

While the Court finds King did not waive his right to have his competency to plead guilty evaluated, it denies this claim as without merit. The Due Process Clause does not require "a [competency] hearing in every instance . . . ." *United States v. Nichols,* 56 F.3d 403, 414 (2d Cir.1995). Under the law of this Circuit, "a hearing must be held when there is a reasonable ground for a [trial] court to conclude that the defendant may not be competent to stand trial." *Harris v. Kuhlmann,* 346 F.3d 330, 350 (2d Cir.2003) (*quoting Nicks v. United States,* 955 F.2d 161, 168 (2d Cir.1992)). In evaluating a trial court's decision regarding a defendant's competency, "only evidence before the court at the time its decision was made is pertinent." *Nicks,* 955 F.2d at 168. "There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed;" however, the following have been recognized as relevant factors: "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial." *Drope v. Missouri,* 420 U.S. 162, 180, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). Addi-

**25.** However, a defendant who pleads guilty must not only be found competent to stand trial, he must also knowingly and voluntarily waive his constitutional rights. See *id.* at 400. A "competency inquiry" asks "whether he [defendant] has the *ability* to understand the proceedings," whereas a "knowing and voluntary inquiry" asks "whether he [defendant] actually *does* understand the significance and consequences of a particular decision and whether the decision is uncoerced." *Id.* at 401 n. 12 (emphasis in original).

**26.** By way of example, in *Hoornweg v. Smith,* 504 F.Supp. 1189 (W.D.N.Y.1981), a district court considered a habeas petitioner's claim that his due process rights were violated when he was not given a competency evalua-

tion pursuant to a trial court order yet did not consider whether this claim was forfeited by his plea of guilty. The court went on to state that "[a] plea cannot be knowing or voluntary unless the defendant is competent to understand the nature of the charge, his constitutional rights and the scope of the penalty provided by law." *Id.* at 1191–1192.

**27.** *See also United States v. Nichols,* 56 F.3d 403, 413 (2d Cir.1995) ("Waiver of a constitutional right is only valid if the defendant is competent. . . . When a court determines whether it should accept a waiver, assessing competency is only the first of a two-part inquiry.")

tionally, "it is well established that some degree of mental illness cannot be equated with incompetence to stand trial." *United States v. Vamos*, 797 F.2d 1146, 1150–1151 (2d Cir.1986) (*citing Hall v. United States*, 410 F.2d 653, 658 (4th Cir.1969), *cert. denied*, 396 U.S. 970, 90 S.Ct. 455, 24 L.Ed.2d 436 (1969)).

While New York law on competency determinations is different from federal law, it provides the "procedural protections" required under federal law. *Silverstein v. Henderson*, 706 F.2d 361, 367 (2d Cir. 1983).[28]

■ In this case, there is insufficient evidence in the record of King's habeas petitions to support a determination that the trial court had reasonable ground to conclude that King may not have been competent. Nothing in this record indicates that King's behavior rose to a level of irrationality that would have warranted further inquiry by the trial court into his competence at the time of his plea or sentencing. Indeed, King responded appropriately to the questions posed. At the beginning of the plea hearing, King responded completely to the judge's questions regarding his prior convictions. Further into the plea hearing when the judge reviewed King's forfeiture of an insanity defense and trial rights, King responded with one word, "Yes" answers and stated

"I am told that it [the psychiatric defense] would be denied." (Plea Tr. at 12.)

As for the prior medical opinions regarding King's mental health, they appear to have been requested by the parties, yet they were referenced by the trial court judge at the plea proceeding. The judge questioned King, "[E]ven though everyone agrees you have psychiatric problems, you need treatment, the doctor that Mr. Yucevicius [defendant's lawyer] found, the Prosecutor's doctor they agreed you knew what was going on?," and King responded "Yes." (*Id.* at 13.) The judge also made the psychiatric evaluations part of the presentence report, stating that she was "not ordering psychiatric in aid of sentence because we have the psychiatric reports already." (*Id.* at 16.)

While these psychiatric evaluations focused on King's mental state at the time of the crime and both found him to have a mental illness, they both noted that his condition was improved.[29] Neither report raised the issue of King's competence to stand trial or plead guilty. As they did not question King's competency to stand trial, and King's behavior at the plea proceedings did not indicate possible incompetence, the reports did not create reasonable ground for the trial court to conclude that King may be incompetent to plead guilty. *See Vamos*, 797 F.2d at 1151 (because the psychiatric report "did not link

---

**28.** Under N.Y.Crim. Proc. Law § 730.30(1), a court must issue an order of examination when it is "of the opinion that the defendant may be an incapacitated person." If the psychiatric examination reports are not unanimous or if the defendant or district attorney so move, the court must conduct a competency hearing. Otherwise, the court may, on its own motion, conduct a hearing. *See* N.Y.Crim. Proc. Law § 730.30(2)-(4). Under federal law, a psychiatric examination is not required prior to a competency hearing. *See* 18 U.S.C. § 4241.

**29.** Goldstein, King's psychiatrist, noted that "his condition is much improved as a result of treatment with psychotropic medication since his incarceration," and that "he is not suicidal." (Psychiatric Report of Dr. Robert Goldstein, at 3–4, dated Aug. 16, 1999, submitted pursuant to Resp. Aff.) Weber, retained by the prosecution, found King's speech "lucid and coherent." (Psychiatric Report of Dr. David Weber, at 3, dated Nov. 22, 1999, filed by Respondent on February 15, 2006.) Weber also found that there was "no formal thought disorder, nor evidence of psychotic symptoms." (*Id.*)

Vamos' [the defendant's] illness to her competency to stand trial, and the observations of the court and Vamos' counsel did not provide such a connection, the report did not give rise to reasonable cause to doubt Vamos' competency to do so.")

Moreover, in rulings on King's First and Third § 440 Motions, the trial court judge, the same judge who accepted King's plea, directly addressed his competence at the time of the plea.[30] The trial court judge determined that at the plea King was "fully allocuted" and "did not display any confusion or lack of comprehension of the proceedings and was able to appropriately answer the questions put to him by the court." (*People v. King*, No.1921–99 (N.Y.Sup.Ct.2000) at 3, attached to Resp. Aff. as Exhibit C.) The court concluded that "while defendant does have a history of mental illness, nothing in his mental health records suggests that he is unable to understand his own actions or the actions of those around him." *Id.* In dismissing King's Third § 440 Motion, the trial court judge noted that "the court and counsel fully examined the issue of defendant's competence to stand trial." (*People v. King*, No.1921–99 (N.Y.Sup.Ct.2005) at 2, attached to Resp. Aff. as Exhibit T.)

For the reasons stated above, and set forth in the state court opinions, the Court finds no merit in King's claim that he should have been afforded a competency evaluation.

### 4. *Ineffective Assistance of Counsel*

King's assertion of ineffective assistance of counsel is closely related to his claim that his plea was not knowingly and voluntarily entered. Because King does not specify his grounds for alleging ineffective assistance of counsel in his Motion for Relief, the Court presumes these grounds to be the discrepancy between his sentence and his impressions based on discussions with trial counsel, Michael Yucevicius.

The Sixth Amendment right to counsel has been recognized by the Supreme Court to guarantee the right of effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 685–86, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (*citing McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). To show that counsel was ineffective, King must demonstrate that counsel's performance "fell below an objective standard of reasonableness" and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 104 S.Ct. 2052. In assessing counsel's ineffectiveness, "the court must be 'highly deferential,' must 'consider[ ] all the circumstances,' must make 'every effort ... to eliminate the distorting effects of hindsight,' and must operate with a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir.2001) (*quoting Strickland*, 466 U.S. at 688–89, 104 S.Ct. 2052).

■ In the interest of judicial economy, this Court is free to dispose of an ineffective assistance claim solely on the basis of lack of sufficient prejudice. *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052. Here, even if the Court were to accept King's suggestion that he was misled by counsel into believing he would receive eight years, there is no evidence on the record that but for counsel's actions, King would not have pled guilty. As discussed above, the trial court judge specifically

---

**30.** While the Court is reviewing King's claim de novo, not with AEDPA deference, it nonetheless takes note of the state court proceedings in this case.

explained to King numerous times that his sentence was a prison term of nine years, and King accepted this sentence as part of his plea, thus belying any assertion that he believed he would get eight years.

### 5. *Right to Confront Witnesses*

A defendant's Sixth Amendment right to confront his accusers is one of the three important constitutional rights waived upon entry of a guilty plea. *See Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Rule 11 of the Federal Rules of Criminal Procedure requires a court, prior to accepting a guilty plea, to determine that the defendant understands he is waiving his trial rights, including "the right to confront and cross-examine adverse witnesses." However, the "exact procedures of Rule 11 are not constitutionally mandated;" rather, they "simply serve to ensure that a district court does not accept a plea that is not completely voluntary." *United States v. Mercado*, 349 F.3d 708, 711 (2d Cir.2003) (*citing McCarthy v. United States*, 394 U.S. 459, 465, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969)).

In the instant case, the trial court judge told King at the plea hearing that "when you plead guilty . . . you give up your trial rights" and clearly indicated that among those rights was the "right to confront the witnesses against you." (Plea Tr. at 10–11.) Given the trial court judge's express listing of the rights waived by King upon entry of a plea of guilty, the Court finds that King waived his right to confront any witnesses against him. Accordingly, his Confrontation Clause claim is not cognizable on federal habeas review.

### III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the petition of petitioner Joesun Kacrown King for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.

As King has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); *Lozada v. United States*, 107 F.3d 1011, 1014–16 (2d Cir.1997), abrogated on other grounds by *United States v. Perez*, 129 F.3d 255, 259–60 (2d Cir.1997).

SO ORDERED.